IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

(1) BETTY WOLFE, individually, )
)
              Plaintiff, )
)
v. )
)
(1) J.J. GRAY, in his individual and official )   Case No. 13-CV-286-JED-JFJ
capacity; )
(2) BRANDON MCFADDEN, in his )
individual capacity; and )
(3) CITY OF TULSA, a municipal )
corporation, State of Oklahoma )
)
             Defendant. )

## OPINION AND ORDER

Before the Court are motions for summary judgment by Defendant City of Tulsa ("City") and Defendant J.J. Gray (Doc. 68, 70).[1] The Court has considered all related filings and evidentiary submissions made by the parties. (*See* Doc. 68, 70, 72-80, 85, 87, 91). The following facts are supported by evidence in the record and are construed in favor of Plaintiff, the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**I.**    **The Evidence**

Defendant Gray was an officer with the Tulsa Police Department ("TPD") for twenty years before he retired in 2010 under investigation for criminal misconduct. In April 2007, while he was assigned to the Detective Division, Gray prepared an "Affidavit for Search Warrant" that contained the following representations:

> That within the past 72 hours, he was contacted by a reliable confidential informant (hereinafter "RCI") that stated a white female named Betty was selling large

---

[1] Defendant Gray adopted and incorporated the City's motion into his own motion, with the addition of a few arguments. (*See* Doc. 70 at 1). Notably, Defendant McFadden filed a Suggestion of Bankruptcy (Doc. 6) on October 21, 2013, and has made no other filing in this case since that date.

> quantities of methamphetamine. Further that she was selling the methamphetamine from her residence at 5141 S. 34th West Avenue.
>
> Your Affiant further states that the "RCI" directed your affiant to the residence and pointed it out to your affiant as being the residence from which the methamphetamine was being sold. That residence was 5141 S. 34th W. Ave.
>
> Your Affiant further states that this RCI has worked with police in the past and has provided information in at least 2 narcotic investigations. Further that in each instance where the RCI has provided information, that information has been verified as true through investigation.
>
> Your Affiant further states that the RCI has a working street knowledge of methamphetamine and several other controlled and dangerous substances, its appearance, uses, manufacture, and distribution.
>
> Your Affiant furthers [sic] states that the RCI has been in the residence in the past 48 hours and has witnessed a quantity of methamphetamine. Further that the RCI states that the quantity of methamphetamine they observed inside the residence was packaged for sale.
>
> Your Affiant further states that he has received information from one other informant that Betty is selling large quantities of methamphetamine from her residence.

(Doc. 68-3 at 5-6).[2] Based on this affidavit, a Tulsa County district court judge issued a search warrant on April 13, 2007, authorizing the search of Betty Wolfe's home for "methamphetamine, fruits, instrumentalities, monies, guns, records, and proof of residency." (*Id*. at 7).

Later in the day on April 13, Officer Gray served the warrant at Ms. Wolfe's residence, along with fellow TPD Officer Debra Glenn and Defendant Brandon McFadden, who was an agent for the Bureau of Alcohol, Tobacco, and Firearms. Officer Glenn thought it was "odd" that they were serving a warrant only related to drugs, since she and Gray were working burglary cases at the time. (Doc. 68-12 at 6). Moreover, TPD policy required that a supervisor be present for the execution of high-risk or unknown-risk search warrants, and all residential search warrants were

---
[2] The page numbers referenced in this Opinion are those found in the header of each document, unless otherwise noted.

considered to be unknown risks unless they were specifically designed as high-risk. (*See* Doc. 68-15 at 13; Doc. 87-8 at 5). Nevertheless, no supervisor was present for the execution of the search warrant of Ms. Wolfe's home. (Doc. 87-8 at 8).

The officers were surveilling Ms. Wolfe's residence when Ms. Wolfe walked out of her front door. At this point, the three officers approached her, and she asked them to come into the house. While Agent McFadden stayed with Ms. Wolfe in the living room, Officers Glenn and Gray walked down the hallway and looked into the first bedroom on the east side of the house. Ms. Wolfe's niece was in the bedroom with a man named Slade Smith. Slade Smith was one of TPD's "biggest bad guys"—a "dope dealer" who was "connected to homicides." (Doc. 68-12 at 9). Upon seeing Smith, Officer Gray said, "Slade, get out of here, you were never here." (*Id*.). Officer Glenn immediately thought something was wrong and wondered why Gray would let "the biggest bad guy we have" go. (*Id*.).

Officer Glenn was then asked to stay in the living room with Ms. Wolfe while Officer Gray and Agent McFadden searched the house. (Doc. 68-12 at 6-7). McFadden went into Ms. Wolfe's bedroom and came out with two bags of what appeared to be methamphetamine. (*Id*. at 9-10). Gray and McFadden announced that the two bags held more than two ounces of methamphetamine. (*Id*. at 13). The officers also found cash, digital scales, meth cut, and baggies in the house. (Doc. 68-3 at 11).

A TPD Property Receipt and Supplemental Offense Report were filled out after the search. The Property Receipt was signed by McFadden, who also signed on behalf of Officer Glenn as a "witnessing officer." (Doc. 68-12 at 28). Glenn asserts that she did not give McFadden permission to sign for her and that she had nothing to do with turning in the property. (Doc. 68-12 at 13). Moreover, the Supplemental Offense Report stated that only approximately 13 total grams of

suspected methamphetamine were found in Ms. Wolfe's residence, despite McFadden's and Gray's earlier insistence that the amount was two ounces (over 56 grams). (*See* Doc. 68-12 at 30). The Supplemental Offense Report also inaccurately stated that Officer Gray had served Ms. Wolfe with the search warrant after knocking on her front door, and it failed to mention Slade Smith at all.

At the time of the search, the Plaintiff had a 20-year suspended sentence for possession of methamphetamine with intent to distribute in Tulsa County District Court Case No. CF-2003-04994.[3] (*See* 68-4 at 2). As a result of the search, the Tulsa County District Attorney's Office filed an Application to Revoke Suspended Sentence in CF-2003-04994 based on allegations of unlawful possession of a controlled drug (methamphetamine) with intent to distribute and unlawful possession of paraphernalia. (Doc. 68-6 at 2). On April 29, 2008, Ms. Wolfe waived a hearing and confessed the application to revoke. (Doc. 68-7 at 28). On revocation, Judge Dana L. Kuehn sentenced Ms. Wolfe to twelve years' imprisonment on the first count and five years' imprisonment, to run concurrently with each other. (*Id.* at 29).

Ms. Wolfe was also charged in Case No. CF-2007-2104 with unlawful possession of a controlled drug with intent to distribute and unlawful possession of paraphernalia. (*See* Doc. 68-8). When Officers Gray and Glenn received subpoenas to go to court for Ms. Wolfe's case, Gray told Glenn that they "were not going to court on that" and that he was "just going to let her plead and go in on her 20 years." (Doc. 68-12 at 12). Ms. Wolfe ultimately pled guilty to both charges

---

[3] Plaintiff argues that this prior conviction is irrelevant. She also argues that it was vacated and, thus, is inadmissible under Fed. R. Evid. 609. In fact, this conviction not vacated; only her confession to the application to revoke her suspended sentence was vacated. (*See* Doc. 68-14 at 5). Moreover, the Court considers this prior conviction to be highly probative as to whether probable cause existed to prosecute Ms. Wolfe in 2007.

in the 2007 case on May 12, 2008.[4] Judge Dana L. Kuehn sentenced Ms. Wolfe to twelve years' imprisonment for the possession with intent to distribute charge and one year for the paraphernalia charge, to run concurrently with each other and with the sentence in CF-2003-04994. (Doc. 68-9 at 6).

On May 6, 2010, Brandon McFadden pled guilty to one count of conspiracy to distribute methamphetamine. Later that year, Gray pled guilty to one count of stealing funds of the United States in excess of $1,000. On June 1, 2011, Gray gave sworn testimony in the trial of three other TPD officers: Harold R. Wells, Nic Debruin, and Ernest Bruce Bonham. On the witness stand, Gray admitted to stealing money from suspects while conducting searches (*see* Doc. 87-5 at 8, 10, 13, 16); receiving stolen money from Brandon McFadden (*id*. at 17); and dealing drugs (*id*. at 21). Gray also admitted to lying on two affidavits. (*Id*. at 16). In his deposition for the present case case, McFadden asserted that he was aware that some TPD officers included falsified information, including information regarding nonexistent confidential informants, in order to obtain search warrants. (Doc. 87-6 at 14-15). He also admitted that some TPD officers would keep bags of drugs in order to plant them "into a house or apartment or person, a car, whatever." (*Id*. at 11). He stated that his involvement with Gray "was just for personal gain." (*Id*. at 23).

In regard to Ms. Wolfe's case, Gray has stated that one of the two confidential informants referenced in the Affidavit for Search Warrant in Ms. Wolfe's case was a woman named Monica Sutter. (Doc. 87-1 at 20). Specifically, Gray asserted that Ms. Sutter was the "other informant" that told him that Ms. Wolfe was "selling large quantities of methamphetamine from her residence," as referenced towards the end of Gray's Affidavit for Search Warrant. However, Ms.

---

[4] The Court only mentions these guilty pleas and the confession to the application to revoke as background information. Because her guilty pleas and her confession were later vacated by Judge Kuehn, the Court will not rely on them in considering the merits of Plaintiff's case.

5

Sutter denies telling Gray this. (Doc. 68-11 at 6). Ms. Sutter, instead, avers that Gray asked her about whether Slade Smith was staying with Ms. Wolfe at the time. (*Id*. at 5).

Gray has stated that he thinks the other confidential informant was a woman named Donna Crabtree, but he did not keep a file on her—in violation of TPD policy. (Doc. 87-1 at 20; Doc. 68-15 at 18). Ms. Wolfe does not know and has never heard of D.C. (Doc. 87-11). McFadden, in turn, admits that on the day they executed the search of Ms. Wolfe's residence, he did not know whether the search warrant was "real" or "unreal." (Doc. 87-6 at 21).

Moreover, Ms. Wolfe asserts that the drugs reportedly found in her home did not belong to her, nor was she aware, "or have any knowledge or suspicion," that the drugs were in her home. (Doc. 87-11 at 1). She does not deny that the drug paraphernalia belonged to her. Neither Gray nor McFadden has admitted to or implicated the other in planting the drugs in Ms. Wolfe's residence. In contrast, McFadden has admitted that he and Gray stole money from Ms. Wolfe's house during the search. (Doc. 87-6 at 17). McFadden estimates that he and Gray pocketed about $1,000 a piece.

On April 13, 2011, counsel for Ms. Wolfe filed an Application for Post-Conviction Relief and Request for Evidentiary Hearing and Discovery (Doc. 68-13) in Ms. Wolfe's 2007 drug case before Judge Kuehn. In an evidentiary hearing held on May 16, 2011, Ms. Wolfe called Ms. Sutter and Officer Glenn to the stand to testify on her behalf. After considering the evidence, Judge Kuehn vacated the conviction and guilty pleas in CF-07-2104, as well as the confession to the application to revoke the suspended sentence in Ms. Wolfe's earlier case, CR-03-04994. (Doc. 87-13 at 2). Instead of proceeding to trial on the 2007 charges, the State of Oklahoma moved to dismiss those charges, which Judge Kuehn granted with prejudice. (*Id*. at 4). Plaintiff then initiated this civil rights suit on May 16, 2013. (*See* Doc. 2).

6

## II. Summary Judgment Standards

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for a nonmoving party." *Anderson*, 477 U.S. at 248. The courts thus determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. All justifiable and reasonable inferences from the evidence are to be drawn in the non-movant's favor. *Id*. at 255.

## III. Analysis

Although Plaintiff brought several claims in her Complaint (Doc. 2), she now concedes that her § 1983 malicious prosecution claim—brought against Defendant Gray and against Defendant City under a *Monell* theory—is the only claim that is not time-barred. (Doc. 87 at 22, n.5). Thus, the motions for summary judgment (Doc. 68, 70) are hereby **granted** as to Plaintiff's Fifth and Fourteenth Amendment claims, her independent Fourth Amendment claims, and her claim under the Oklahoma Constitution.

"The common law elements of malicious prosecution are the 'starting point'" for the Court's analysis of Ms. Wolfe's § 1983 malicious prosecution claim. *Wilkins v. DeReyes*, 528 F.3d 790, 797 (10th Cir. 2008). However, "'the ultimate question' in such a case 'is whether plaintiff has proven the deprivation of a constitutional right.'" *Id*. (quoting *Novitsky v. City of Aurora*, 491 F.3d 1244, 1257-58 (10th Cir. 2007)). In the § 1983 malicious prosecution context, that constitutional right is the plaintiff's Fourth Amendment right to be free from unreasonable

seizures. *Taylor v. Meacham*, 82 F.3d 1556, 1561 (10th Cir. 1996). *See also Montoya v. Vigil*, 898 F.3d 1056, 1062 (10th Cir. 2018) (analyzing a malicious prosecution claim in terms of the Fourth Amendment).

The elements of a § 1983 claim for malicious prosecution have been defined by the Tenth Circuit as follows: "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Montoya*, 898 F.3d at 1066 (quoting *Wilkins*, 528 F.3d at 799).

### A. Favorable Termination

The City argues that Plaintiff cannot satisfy the second element of her malicious prosecution claim. (*See, e.g.,* Doc. 68 at 28). In order to meet the second element, "the plaintiff 'has the burden to show that the termination was favorable.'" *Montoya*, 898 F.3d at 1066 (quoting *Cordova v. City of Albuquerque*, 816 F.3d 645, 650 (10th Cir. 2016)). "To carry that burden, a plaintiff must allege facts which, if true, would allow a reasonable jury to find the proceedings terminated 'for reasons indicative of innocence.'" *Id.* (citing *M.G. v. Young*, 826 F.3d 1259, 1263 (10th Cir. 2016)). A court must "look to the stated reasons for the dismissal as well as to the circumstances surrounding it in an attempt to determine whether the dismissal indicates the accused's innocence." *Wilkins*, 528 F.3d at 803.

In *Wilkins*, the plaintiffs contended that police officers used coercive interrogations of two young witnesses to fabricate evidence implicating the plaintiffs in a quadruple homicide. *Id.* at 793. When the trial court in the criminal cases determined that the statements of one of those witnesses would be excluded from evidence, the district attorney dismissed the charges by filing

*nolle proseques*. *Id*. at 795. In the subsequent civil rights case, the Tenth Circuit held that the *nolle proseques* should be considered terminations in favor of the plaintiffs. *Id*. at 803. The Court explained that these dismissals "were not entered due to any compromise or plea for mercy" by either plaintiff; instead, the dismissals "were the result of a judgment by the prosecutor that the case could not be proven beyond a reasonable doubt." *Id*. The Court further explained that the plaintiffs had not engaged in any "misconduct" that would turn the *nolle proseques* into unfavorable terminations, such as "hiding otherwise perfectly reliable evidence." *Id*. at 803-04.

The Court finds that the present case is substantially similar to *Wilkins*. Here, the prosecution dismissed the 2007 charges against Ms. Wolfe after Judge Kuehn vacated Ms. Wolfe's conviction and guilty pleas in that case and vacated the confession to the application to revoke the suspended sentence in Ms. Wolfe's 2003 case. Notably, the charges were dismissed with prejudice. (Doc. 68-14 at 6). Though neither the State nor Judge Kuehn stated their reasoning, their actions and the surrounding circumstances clearly suggest favorable termination.

The Court specifically notes the arguments made by Ms. Wolfe in requesting an evidentiary hearing before Judge Kuehn in the first place. In her application seeking post-conviction relief and an evidentiary hearing, Ms. Wolfe argued that the warrant to search her residence "was procured with false information that was unknown to [Ms. Wolfe] at the time of her plea and that could not have been obtained through the exercise of reasonable diligence." (Doc. 68-13 at 4). She also asserted that the officers "intentionally failed to disclose exculpatory facts in their investigative reports"—specifically, that Slade Smith and his girlfriend were at the residence when the search was performed, and Smith was "located in the back of the residence in proximity to where the drugs were allegedly found." (*Id*. at 5). Ms. Wolfe further argued that Officer Gray "conducted the investigation with the criminal intent of locating and seizing any

9

cash for his personal use." (*Id*. at 6). She alleged that Gray and McFadden only turned in some of the money and methamphetamine found in her home, (*id*. at 7-8), and that they lied about how the evidence was turned in and documented (*id*. at 9). Ultimately, Ms. Wolfe asserted that "she would not have entered a plea of guilty had the facts . . . been disclosed in a lawful manner consistent with Oklahoma Statutes." (*Id*. at 11-12).

After receiving Ms. Wolfe's application, Judge Kuehn held an evidentiary hearing and heard from Ms. Sutter and Officer Glenn concerning the search warrant affidavit and the search itself. It is telling that Judge Kuehn, after considering the arguments and evidence presented, took the extraordinary step of vacating Ms. Wolfe's conviction and guilty pleas in the 2007 case and put her back on probation in the 2003 case.[5]

There is no evidence that Ms. Wolfe engaged in any misconduct that led to the dismissal of these charges or that the dismissal was based on a compromise with the prosecution. Instead, the Court finds that the evidence would allow a reasonable jury to find the proceedings terminated "for reasons indicative of innocence."

**B.      Probable Cause**

The City also argues that Plaintiff cannot prove her third element, lack of probable cause. (Doc. 68 at 27). In response, Plaintiff first points to evidence that Officer Gray's Affidavit for Search Warrant was potentially falsified. (*See* Doc. 87 at 24-25).

Although the Tenth Circuit has not weighed in on this precise issue, "federal courts of appeals appeals have widely held that the exclusionary rule does not apply in § 1983 cases." *Lingo v. City of Salem*, 832 F.3d 953, 959 (9th Cir. 2016); *see also Townes v. City of New York*,

---

[5] As explained to Ms. Wolfe by Judge Kuehn, "It's like you never confessed the application [to revoke the suspended sentence in CR-03-04994] because I am letting you . . . vacate that confession and start over." (Doc. 68-14 at 5 [Tr., p. 55]).

176 F.3d 138, 149 (2d Cir. 1999) ("The lack of probable cause to stop and search does not vitiate the probable cause to arrest, because . . . the fruit of the poisonous tree doctrine is not available to assist a § 1983 claimant."); *Black v. Wigington*, 811 F.3d 1259, 1268 (11th Cir. 2016) ("We now join our sister circuits and hold that the exclusionary rule does not apply in a civil suit against police officers."); *Machado v. Weare Police Dep't*, 494 F. App'x 102, 106 (1st Cir. 2012) (unpublished) (holding that the exclusionary rule does not apply in a § 1983 case); *Wren v. Towe*, 130 F.3d 1154 (5th Cir. 1997) (per curiam) (finding that the application of the exclusionary rule in a § 1983 case "would be inappropriate.").

Because the exclusionary rule "exacts a heavy toll on both the judicial system and society at large," *Davis v. United States*, 564 U.S. 229, 237 (2011), the rule does not apply unless "its deterrence benefits outweighs its 'substantial social costs.'" *Pa. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 363 (1998) (quoting *United States v. Leon*, 468 U.S. 897, 907 (1984)). Recognizing these substantial costs, the U.S. Supreme Court has "repeatedly declined to extend the exclusionary rule to proceedings other than criminal trials." *Scott*, 524 U.S. 363.

The undersigned finds that the deterrence objective of the exclusionary rule has already been achieved here, since Ms. Wolfe's 2007 convictions were vacated and the officers have faced criminal charges for related conduct affecting other individuals. For that reason, and in light of the persuasive holdings of so many federal courts of appeals, as cited above, the undersigned finds that the exclusionary rule should not be applied in this case. Thus, looking past the clearly problematic search warrant, the Court must analyze the evidence concerning the existence of probable cause for Ms. Wolfe's "arrest, continued confinement, or prosecution." *See Wilkins*, 528 F.3d at 799.

Importantly, Plaintiff does not dispute that meth cut, baggies, scales, and other drug paraphernalia were found in her home. She does, however, dispute the ownership of the methamphetamine. In her Complaint, it is alleged that "the meth found in the residence actually belonged to Slade Smith." (Doc. 2 at ¶ 22). In her deposition, Plaintiff alleged that Slade Smith planted the drugs. (Doc. 87-9 at 4). Even in her application for post-conviction relief before Judge Kuehn, Ms. Wolfe suggested that the drugs were Slade's and that the officers' failure to document Slade's presence in the house made it "nearly impossible to defend herself." (Doc. 68-13 at 7). She contended that she could have otherwise defended herself based on the doctrine of "dominion and control." (*Id*.).

The theory that the drugs belonged to Slade also fits with Ms. Wolfe's affidavit, in which she states that the drugs did not belong to her and she was not *aware* they were in her house. (Doc. 87-11). In contrast, in *Haley v. City of Tulsa*, the plaintiff made more definitive assertions that the drugs *and* paraphernalia allegedly found during a police search did not belong to him and "were not on [his] properties prior to the search." Order (Doc. 127), 10-CV-361-TDL-FHM (N.D. Okla. June 18, 2013).

The Court notes that this theory is fairly speculative, especially since the evidence consistently shows that the bulk of the methamphetamine was found in Ms. Wolfe's bedroom (*see* Doc. 68-12 at 9, Doc. 68-12 at 30). Nonetheless, even if the Court were to assume that the drugs belonged to Slade Smith, the fact that Ms. Wolfe was the owner of the house where the methamphetamine and paraphernalia were found was sufficient to provide probable cause to arrest her.

In her motion for summary judgment, Plaintiff's counsel suggests for the first time that McFadden and Gray might have planted the drugs in Ms. Wolfe's house. (*See* Doc. 87 at 27).

As noted above, there is evidence that McFadden and Gray were part of a network of corrupt law enforcement officers who, among other things, kept extra bags of drugs for the purpose of planting the drugs on a person or in a home or vehicle. (Doc. 87-6 at 11). Despite this very troubling evidence, there is nothing further that supports a reasonable inference that McFadden and Gray planted the methamphetamine *in this case*. The evidence, construed in favor of Plaintiff, simply does not support that conclusion.

First, the evidence that McFadden and Gray underreported the amount of methamphetamine found at Ms. Wolfe's residence cuts against the idea that the methamphetamine belonged to the officers. Why would they steal from their own supply? The Court also observes, again, that Ms. Wolfe does not dispute that digital scales, meth cut, and baggies were found in her home during the search. While it is strange that Officer Gray let Slade Smith leave the house and did not include him in the post-arrest records, one is hard-pressed to infer from this that the officers planted the methamphetamine in Ms. Wolfe's bedroom. To reach that conclusion would require significant speculation.

In sum, the Court finds that there is no genuine dispute concerning the presence of probable cause to detain Ms. Wolfe.

**IV.  Conclusion**

Because the Court has concluded that the evidence in the record could not support a reasonable jury finding for the Plaintiff on her malicious prosecution claim, the motions for summary judgment (Doc. 68, 70) by the City and Defendant Gray are hereby **granted**.

**SO ORDERED** on this 15th day of October, 2018.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE